**Camilio A. GOPEZ, M.D., Plaintiff,**

v.

**Sun K. SHIN and Prudential–Bache Securities, Inc., Defendants.**

**Civ. A. No. 89–641–JRR.**

United States District Court, D. Delaware.

April 18, 1990.

Roderick R. McKelvie of Ashby, McKelvie & Geddes, Wilmington, Del., for plaintiff.

Francis G.X. Pileggi of Morris, James, Hitchens & Williams, Wilmington, Del., for defendant Sun K. Shin.

Paul L. Regan of Skadden, Arps, Slate, Meager & Flom, Wilmington, Del., for defendant Prudential–Bache Securities, Inc.

## OPINION

ROTH, District Judge.

Plaintiff brought this action against his former stockbroker and the firm by which that broker was employed, charging fraudulent conduct under the federal securities laws and state law. Presently before the Court is defendants' renewed motion to dismiss the amended complaint on the grounds of failure to plead fraud with particularity, failure to state a claim for which relief can be granted, failure to satisfy the applicable statute of limitations, and related deficiencies of subject matter jurisdiction.

For the reasons discussed below, the motions to dismiss will be denied. With the denial of the motions to dismiss, the Court will similarly deny further consideration of the defendants' motion to stay discovery, and a temporary stay of discovery now in effect shall terminate three days after the issuance of this Opinion.

### FACTS

The following facts as described in the amended complaint are assumed to be accurate and are viewed in the light most favorable to the nonmoving party for the purposes of the defendants' motions to dismiss. *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *In re Catanella and E.F. Hutton & Co. Sec. Litig.*, 583 F.Supp. 1388, 1393 (E.D.Pa.1984). The plaintiff Camilio A. Gopez, M.D. ("Gopez"), maintained three investment accounts with defendant Prudential–Bache Securities, Inc. ("Prudential–Bache"), that were managed by defendant Sun K. Shin ("Shin"), a stockbroker employed by Prudential–Bache. These accounts consisted of a "defined benefits pension plan," a "pension trust," and a "profit sharing trust." Gopez filed the complaint in this action on November 14, 1989, alleging violations of the federal securities laws and related state law claims.

Gopez alleges that during the period Shin managed Gopez's three accounts, Shin inappropriately: (a) entered into a pattern of excessive trading of the securities in these accounts in a manner disproportionate to the size and nature of the accounts; (b) traded in investments wholly unsuitable for the investment objectives of the accounts;

(c) engaged in a practice of purchasing investments in a piece-meal fashion to generate higher commissions; and (d) purchased and rapidly sold certain long-term investments which paid high commissions and were unsuitable for short-term trading.

Gopez asserts federal law claims against both Shin and Prudential–Bache under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, and against Prudential–Bache as a "controlling person" under section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). He also asserts state law claims of common law fraud, breach of fiduciary duty, misappropriation and negligence against both defendants. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and pendent jurisdiction over the related state law claims. The defendants have not filed answers to the complaint to date, but have instead moved for dismissal.

On December 6, 1989, Prudential–Bache filed a motion to dismiss the complaint on the grounds that this Court lacks subject matter jurisdiction, that plaintiff fails to plead fraud with particularity, that he fails to state a claim upon which relief can be granted, and that he is barred from recovery by the applicable statute of limitations. On December 13, 1989, defendant Shin filed a motion to dismiss on the same grounds. On December 18, 1989, Prudential–Bache also filed a motion to stay all discovery pending resolution of its motion to dismiss.

The plaintiff responded to these motions by amending his complaint to add a new paragraph that states the basis for his fraud claims with greater particularity than did the original complaint. This new paragraph makes reference to copies of Prudential–Bache's 1987 and 1988 consolidated securities account statements for the plaintiff's three accounts, which are at-

tached to the amended complaint as an exhibit.[1]

The new paragraph states that the information evident in the securities account statements "offers the following illustrations of wrongdoing," and then describes incidents which the plaintiff views as evidence of high portfolio turnover, inappropriate splitting of stock purchases, and inappropriately rapid buying and selling of "zero coupon bonds." Another new paragraph states that plaintiff discovered Shin's wrongful conduct after Shin concluded his employment with Prudential–Bache on or about January 17, 1989.

On January 16, 1990, Prudential–Bache renewed its motions to dismiss the complaint on the same grounds set forth in its original motion, and renewed its motion to stay discovery. Defendant Shin joined in these motions. This Court granted a temporary stay of discovery until three days after the Court rules on defendants' renewed motion to stay discovery and dismiss the complaint. The parties then submitted further briefs on the renewed motions.

## DISCUSSION

I. *Failure to Plead Fraud with Particularity.*

■ The amended complaint essentially charges that Shin and Prudential–Bache are liable for "churning" Gopez's accounts to generate high commissions. Churning constitutes a deceptive scheme under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5:

Where a customer so relies upon the recommendations of the broker that the broker is in a position to control the volume and frequency of transactions and the broker, abusing the confidence reposed in him, recommends and induces an excessive number of transactions, involving multiple trading in the same security and switches from one security to another, on which commissions and profits are taken without regard to the needs

---

1. This new paragraph should be labelled as paragraph seven of the amended complaint, but was mistakenly labelled as paragraph eight. This mistake did not affect the correct number-

ing of subsequent paragraphs. This new paragraph will be therefore be cited as paragraph seven.

and objectives of the customer, then there is a device, scheme or artifice to defraud within the meaning of [section 10(b) and Rule 10b–5].

*Hecht v. Harris, Upham & Co.*, 283 F.Supp. 417, 432–33 (N.D.Cal.1968), *aff'd as modified on other grounds*, 430 F.2d 1202 (9th Cir.1970); *accord Roche v. E.F. Hutton & Co.*, 603 F.Supp. 1411, 1414–15 (M.D. Pa.1984) (churning constitutes deceptive practice and not merely breach of fiduciary duty). To prevail on the merits of his claim of churning, the plaintiff must show that Shin exercised control over the trading in the accounts and that the trading in plaintiff's accounts was excessive in view of his investment objectives and the market conditions during the relevant time period. *In re Catanella and E.F. Hutton & Co. Sec. Litig.*, 583 F.Supp. 1388, 1406 (E.D.Pa. 1984). As a plaintiff asserting a claim under section 10(b) and Rule 10b–5, Gopez must also prove that the defendant acted with scienter. *Id.*

■ Defendants argue that Gopez's amended complaint must be dismissed pursuant to Federal Rule of Civil Procedure 9(b) for failure to plead this claim of fraud with particularity.[2] The district courts of the Southern District of New York and Northern District of Illinois have applied Rule 9(b) in a notably forceful manner in a number of decisions granting motions to dismiss churning claims. *See, e.g., Jamison v. Kidder, Peabody & Co.*, No. 84–C–2362, slip op. (N.D.Ill.1987) (available on Westlaw at 1987 WL 6602); *Siegel v. Tucker, Anthony & R.L. Day, Inc.*, 658 F.Supp. 550, 554 (S.D.N.Y.1987); *Moran v. Kidder Peabody & Co.*, 609 F.Supp. 661, 666 (S.D. N.Y.1985), *aff'd without opinion*, 788 F.2d 3 (2d Cir.1986); *Russo v. Bache Halsey Stuart Shields, Inc.*, 554 F.Supp. 613, 617–18 (N.D.Ill.1982); *Polera v. Altorfer,*

*Podesta, Woolard & Co.*, 503 F.Supp. 116, 118–19 (N.D.Ill.1980); *Vetter v. Shearson Hayden Stone Inc.*, 481 F.Supp. 64, 66–67 (S.D.N.Y.1979).

In the view of these courts, in order to plead a churning claim with particularity, a complaint must set forth: (1) the nature, amount and date of the securities transactions in question; and (2) facts sufficient to permit the calculation of the turnover rate[3] of the account and/or the percentage of the account value paid in commissions. *E.g., Siegel*, 658 F.Supp. at 554; *Shelley v. Noffsinger*, 91 F.R.D. 263, 265 (N.D.Ill.1981). Not surprisingly, it is the law of these districts to which defendants direct this Court's attention in arguing the motion to dismiss under Rule 9(b).

However, the Third Circuit Court of Appeals has taken a different view of the demands of Rule 9(b) for claims of fraud under the federal securities laws:

In applying the first sentence of Rule 9(b) courts must be sensitive to the fact that its application, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud. Moreover, in applying the rule, focusing exclusively on its "particularity" language "is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules."

*Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99–100 (3d Cir. 1983) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969)); *accord Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *In re Catanella*, 583 F.Supp. at 1398 & n. 8 ("Rule 9(b) must be read in

---

**2.** Rule 9(b) requires: "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally." This rule governs the pleading of claims of fraud under the federal securities laws, as well as claims under the common law. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557–58 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64

L.Ed.2d 802 (1980); *Roche v. E.F. Hutton & Co.*, 603 F.Supp. 1411, 1416 (M.D.Pa.1984).

**3.** The turnover rate is defined as "the ratio of the total cost of the purchases made for the account during a given period to the amount invested." Note, *Churning by Securities Dealers*, 80 Harv.L.Rev. 869, 875 (1967); *see, e.g., Roche*, 603 F.Supp. at 1416 n. 4 (adopting this definition).

conjunction with Rule 8(a) which requires only a short and plain statement of the cause of action").

The *Christidis* court expressly rejected the defendants' request in that action for the court to adopt a position similar to that of the Second Circuit. The court refused to read Rule 9(b) "as a special pleading rule designed to facilitate the disposition, before discovery, of what [defendants] refer to as strike suits in the securities industry." *Christidis*, 717 F.2d at 99.[4] This rejection of the Second Circuit's strict particularity demands applies to churning claims as well. *Roche*, 603 F.Supp. at 1416 n. 3.

The Third Circuit further elaborated upon this view of particularity requirements in the *Seville Industrial* decision:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Seville Industrial*, 742 F.2d at 791 (denying motion to dismiss under Rule 9(b) mail and wire fraud allegations asserted as pattern of racketeering under 18 U.S.C. §§ 1961–1968).

Following the position taken in *Christidis* and *Seville Industrial*, district courts in the Third Circuit have often denied motions to dismiss for lack of particularity in the pleading of churning claims. *See Prodex,*

*Inc. v. Legg Mason Wood Walker, Inc.,* No. 86–1950, slip op. (E.D.Pa.1987) (available on Westlaw at 1987 WL 6329); *Binkley v. Sheaffer,* 609 F.Supp. 601, 603–04 (E.D.Pa.1985); *Roche,* 603 F.Supp. at 1416–17; *In re Catanella,* 583 F.Supp. at 1397–1400. *But cf. Pennington v. Thomson McKinnon Sec., Inc.,* No. 86–3672, slip op. at 2–3 (E.D.Pa.1986) (available on Westlaw at 1986 WL 14726) (dismissing churning claim that "only describes the amount of stock traded, the price paid for the stock and the date of the transaction").

The district courts within the Third Circuit have adopted more flexible language in stating the pleading requirement for a churning claim. A pleading of a churning claim " 'should, at a minimum, set forth a statement of fact which would permit a determination of either the turnover ratio of the account, *or* the percentage of the account value paid in commissions.' " *Roche,* 603 F.Supp. at 1416 (quoting *Baselski v. Paine, Weber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 541 (N.D.Ill.1981) (footnotes omitted and emphasis added)). These district courts thus reject a strict requirement that the complaint set forth " 'such particulars as the nature, amount and dates of the transactions at issue.' " *Id.* (quoting *Shelley v. Noffsinger,* 511 F.Supp. 687, 692 (N.D.Ill.1981)). They rather adopt the more flexible observations of the *Baselski* court:

> "The essence of a churning claim is not a particular transaction, it is the aggregation of transactions, allegedly excessive in number, judged in relation to the plaintiff's investment objectives and the market conditions at that time.... For this reason, it serves no useful purpose to require the plaintiffs to list with particu-

---

**4.** The Supreme Court has described such "strike suits" as claims "by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them." *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966). Yet, as one commentator observed:

> The increasing frequency and success of motions to dismiss under rule 9(b) in part manifest a widespread reaction against per-

ceived abuses of the litigation process. In the minds of many, the strike suit is an exemplar of such abuse..... [However, when] judges dismiss suits on the basis of the pleadings alone, it is far from certain that they can accurately and consistently distinguish strike suits from poorly pleaded yet meritorious claims.

Note, *Pleading Securities Fraud Claims with Particularity under Rule 9(b),* 97 Harv.L.Rev. 1432, 1440 (1984).

larity every transaction relevant to their claim."

*Id.* (quoting *Baselski,* 514 F.Supp. at 541); [5] *see Prodex,* slip op. at 9 (adopting *Roche* approach); *Pennington,* slip op. at 2 (same); *In re Catanella,* 583 F.Supp. at 1398 (adopting *Baselski* language as limitation on strictness with which particularity requirement to be applied).

■ Applying this standard of particularity to Gopez's amended complaint, this Court cannot find that the churning claim is pleaded with insufficient particularity. The amended complaint alleges each of the elements of a churning claim described above and identifies the relevant accounts and time period in which the allegedly inappropriate transactions occurred. For example, the relevant time period is defined as the time during which defendant Shin managed the three accounts. This is information which defendants can readily determine from their own records.

Similarly, plaintiff implies the character of his investment objectives for the relevant accounts by describing illustrations of the types of trading that he deemed contrary to his investment objectives and by listing the exact accounts involved, which are categorized as a "defined benefits pension plan," a "pension trust," and a "profit sharing trust." These allegations are sufficient to place defendants on notice of the bases of Gopez's claims of excessive trading and unsuitable investments.

Moreover, it is inherent in the above reasoning that Rule 9(b) must be read in conjunction with pertinent language of Rule 11:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. Plaintiff's attorney here has signed the complaint; paragraph 6(b) of the complaint provides that defendant Shin "[t]raded in investments wholly unsuitable for the investment objectives of the account." Plaintiff's attorney has thereby certified that he has inquired into that allegation and that it is grounded in fact: that there were such investment objectives, that information concerning them had been made available to defendant Shin, and that he traded in investments which were unsuitable to those investment objectives. If the complaint was signed in violation of Rule 11, appropriate sanctions are available. Plaintiff should not, however, be required to plead his entire case in his complaint. The details of the allegations made in the complaint can be developed through discovery. The particularity of the pleading here is sufficient to give notice to defendants of the precise misconduct in question.

The same analysis which we applied to the "unsuitable investment" averment is applicable to the other allegations of the complaint: *e.g.,* that the portfolio turnover in 1988 of approximately 270% for the profit sharing trust and of approximately 211% for the pension trust was inappropriate for these accounts. The attorney signing the complaint is certifying that there is good cause to support those claims.

The combined effect of Rules 9(b) and 11 is that an attorney before commencing any action involving fraud or mistake must have more specific information reasonably believed to be trustworthy than would be required if she were commencing any other kind of action. By so requiring, these rules seek "to assure that a complaint is being filed to redress a wrong which is reasonably believed to have occurred rather than as a mere

---

**5.** Although the *Baselski* court authored this often-cited observation, it nonetheless held that the churning claim in that action was not pleaded with sufficient particularity because it failed to allege facts from which the turnover ratio of the account or the percentage of the account equity taken as commissions could be calculated. *Baselski,* 514 F.Supp. at 541.

pretext for discovery [in search] of unknown wrongs."

*In re Ramada Inns Sec. Litig.,* 550 F.Supp. 1127, 1132 (D.Del.1982) (citation omitted). By reading Rule 9(b) together with Rule 11 in this manner, we will guard against strike suits in the securities industry, but we will also avoid the "too narrow an approach" interpretation of Rule 9(b) which Judge Gibbons warned against in *Christidis,* 717 F.2d at 100. *See also* Note, *Pleading Securities Fraud Claims with Particularity under Rule 9(b),* 97 Harv.L. Rev. 1432, 1440–41 (1984).

In a further effort to plead with particularity, plaintiff amended his complaint by attaching statements of activities in the accounts for 1987 and 1988 as an exhibit. Making reference to these account statements, Gopez lists transactions he deems "illustrative" of excessive and inappropriate trading in the accounts and calculates the turnover ratios for these illustrations. Contrary to defendants' assertions, the use of such exhibits and reference to them in the allegations of a complaint is a permissible method of pleading. *See Prodex,* slip op. at 9 (complaint's allegations and attached exhibits of account transactions permit determination of turnover ratio and commission percentages); *Jamison v. Kidder, Peabody & Co.,* No. 84–C–2362, slip op. at 2 n. 2 (N.D.Ill.1987) (available on Westlaw at 1987 WL 6602) (exhibits with amended complaint proper when exhibits referred to and delineated in allegations of complaint).

■ It should be noted, however, that plaintiff was not required to assert definitive calculations of the relevant turnover ratios in his complaint. Plaintiff is only required to allege sufficient facts to make it possible for defendants to calculate the turnover ratios or commission percentages. Defendants commonly possess the account records from which they can make all relevant calculations. *See Christidis,* 717 F.2d at 99–100 (details of alleged frauds often cannot be ascertained before discovery); *In re Catanella,* 583 F.Supp. at 1399 ("unless they have been diligent record keepers, plaintiffs may lack, pre-discovery, detailed information necessary to list all transactions or calculate turnover ratios. The records containing that information are most likely in the possession of defendants.").

For these reasons, defendants' motion to dismiss the complaint for failure to plead fraud with particularity must be denied.

## II. *Failure to State a Claim.*

Defendants argue that the plaintiff has failed to state a claim under the federal securities laws for which relief can be granted, and that this Court should therefore dismiss the complaint for that reason and for an attendant lack of federal subject matter jurisdiction. This Court must reject the motion to dismiss on these two related grounds. The principle is well settled that a complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Defendants argue that the turnover ratios pleaded in the amended complaint are legally deficient. Gopez lists as illustrations of his churning claim approximate turnover ratios of no more than four (400 percent) in his three disputed accounts during 1987 and 1988. Defendants are correct in suggesting that the plaintiff may be unable to prevail on the merits of his churning claim if he can produce no evidence of turnover ratios greater than those listed in the amended complaint. *See, e.g., Mihara v. Dean Witter & Co.,* 619 F.2d 814, 821 (9th Cir.1980) (courts and commentators suggest excessive trading demonstrated by annual turnover ratio of six or more); *Siegel v. Tucker, Anthony & R.L. Day, Inc.,* 658 F.Supp. 550, 554 (S.D.N.Y. 1987) (same).

■ However, these allegations of the amended complaint cannot be the basis for dismissal for failure to state a claim. A plaintiff is not required to list definitive calculations of the relevant turnover ratios in the complaint. As discussed above, the

amended complaint indicates that the listed ratios are "illustrations," rather than an exhaustive statement of the grounds for his claim. Moreover, turnover ratios as evidence of excessive trading must be viewed in the context of the investment objectives of the plaintiff and the market conditions that existed in the relevant time period. *See, e.g., Russo v. Bache Halsey Stuart Shields, Inc.,* 554 F.Supp. 613, 617–18 (N.D.Ill.1982) (citing *Fey v. Walston & Co.,* 493 F.2d 1036, 1050 (7th Cir.1974)); *Baselski v. Paine, Weber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 541 (N.D.Ill. 1981). In view of these undeveloped factual matters, the Court cannot hold at this time that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102.

For these reasons, the motion to dismiss the complaint for failure to state a claim must be dismissed. The defendants raise potentially persuasive issues that the Court can consider, if appropriate, in subsequent case dispositive motions by the parties after they have had the opportunity to conduct discovery.

### III. *Statute of Limitations.*

■ The plaintiff asserts that his claims under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 are based on the time period in which defendant Shin managed the three investment accounts. (D.I. 13, ¶ 6). Defendants contend that plaintiff may therefore "be attempting to raise claims that date back as far as 1984." (D.I. 8, at 8). The applicable statute of limitations for claims alleging violations of "section 10(b) and Rule 10b–5 is one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation." *In re Data Access Sys. Sec. Litig.,* 843 F.2d 1537, 1550 (3d Cir.) (en banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).

The original complaint having been filed on November 14, 1989, plaintiff is barred by the statute of limitations from pursuing federal securities claims regarding transactions that occurred on or before November 14, 1986. However, this fact does not implicate all of plaintiff's claims, which also involve allegations of transactions that occurred after November 14, 1986. Plaintiff has also asserted in the amended complaint that he did not discover the facts concerning his claims until January 17, 1989. To the extent defendants contest plaintiff's assertion of the time within which he could have reasonably discovered the facts that form the basis for his claims, such argument depends upon a fully developed factual record not presently before this Court. *See, e.g., Morgan v. Kobrin Sec., Inc.,* 649 F.Supp. 1023, 1027–28 (N.D.Ill.1986) (well-pleaded facts of complaint assumed accurate; statute of limitations issues for securities fraud claims involve factual determinations to be resolved only on basis of full factual record).

For these reasons, defendants' motion to dismiss the complaint as time-barred by the applicable statute of limitations must be denied at this time as to transactions occurring after November 14, 1986. The motion may be renewed at a later time if appropriate. Similarly, defendants' related motions to dismiss the complaint for lack of federal subject matter jurisdiction must also be denied.

### CONCLUSION

This Court finds that plaintiff's amended complaint pleads fraud with sufficient particularity under the Third Circuit's view of the demands of Rule 9(b) for claims of securities fraud. Plaintiff's amended complaint cannot be held at this time to fail to state a federal securities law claim for which relief can be granted. For this reason, defendants' related argument that this Court lacks federal subject matter jurisdiction must also be rejected. The applicable statute of limitations does not necessarily bar all of plaintiff's claims. The motion to dismiss the amended complaint on statute of limitations grounds and the related motion to dismiss for lack of subject matter jurisdiction will therefore be denied. With the denial of the motions to dismiss, the

Court will similarly deny further consideration of the defendants' motion to stay discovery, and the temporary stay of discovery now in effect shall terminate three days after the issuance of this decision.

An appropriate order will follow.